1  MARSHA JONES MOUTRIE, City Attorney
   CAROL ANN ROHR, Deputy City Attorney
2  Bar No. 90012
   carol.rohr@smgov.net
3  1685 Main Street, Room 310
   Santa Monica, California 90401
4  Telephone: (310) 458-8335
   Facsimile:  (310) 451-5862
5
   Attorneys for Defendant
6  OFFICER WILKENING

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10 RICHARD J. GLAIR,                    CASE NO.: CV 11 0093 R (RNB)
                                        (Case assigned to Hon.Manuel L. Real)
11            Plaintiff,
                                        **PRO-SE MATTER**
12     v.
                                        **UNCONTROVERTED FACTS AND**
13 CITY OF SANTA MONICA, CALIFORIA,     **CONCLUSIONS OF LAW AND**
   TIMOTHY J. JACKMAN, POLICE CHIEF     **ORDER THEREON**
14 OF SANTA MONICA, CALIFORNIA,
   SANTA MONICA POLICE OFFICERS         Motion Hearing Date: July 22, 2013
15 WILKENING, BOYD, & AMIACHE           Time: 10:00 a.m.
                                        Ctrm.: 8
16            Defendants.

17

18

19         On July 22, 2013, the motion of defendant, Officer Brent Wilkening, for

20 summary judgment came on for hearing before the undersigned United States District

21 Judge.  Appearing on behalf of moving defendant was Carol Ann Rohr, Deputy City

22 Attorney for the City of Santa Monica; appearing for opposing plaintiff was Richard

23 Glair, pro se.  The Court, having orally granted the motion, now enters its written

24 findings of fact and conclusions of law.

25         After review of the moving, opposition and reply papers, and hearing the

26 parties' oral arguments, the Court finds that there is no triable issue of material fact as

27 to Plaintiff's First and Second Claims alleging violation of his Fourth Amendment

28 rights or as to his Third Claim alleging retaliation in violation of his First Amendment

                                         1

rights.  Specifically, after review of the evidence, the Court finds no material dispute as to the material facts, thereby enabling the Court to find that defendant Officer Wilkening is entitled to judgment as a matter of law.

Should any of the following be more properly characterized conclusions of law, rather than findings of fact, or vice versa, the proper characterization shall apply, no matter how denominated.

THE COURT HEREBY FINDS:

## UNCONTROVERTED FACTS[1]

1.  ***Defendant stopped plaintiff for violation of Santa Monica Municipal Ordinances.***

*Supporting evidence:*

Plaintiff's Deposition, Exhibit "A" 33:23-34:21; 39:24-40:15; 41:7-10; 24-42:14;  Dec. Wilkening ¶ 2; Exhibit "B" Recording of Radio Broadcast of Incident No. 10-34485, January 10, 2010;  Exhibit "C" Notice to Appear; Exhibit "E" Plaintiff's Statement of Genuine Issues and Disputes of Facts filed July 10, 2012; Report and Recommendation of U.S. Magistrate Robert N. Block, Document 74; 9:2-4, 15:1-4 (Not attached to Defendant's Declarations and Exhibits, but referenced by Document 74.)

---

[1] Unless otherwise noted, all exhibits and declaration and page numbers referred to in these Uncontroverted Facts and Conclusions of Law are authenticated in and attached to Defendant's Declarations and Exhibits in Support of His Motion for Summary Judgment filed April 29, 2013.

UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW AND ORDER THEREON

2. ___Defendant asked plaintiff for identification and plaintiff complied___.

      *Supporting evidence:*

       Plaintiff's deposition Exhibit "A", 45:3-24; 46:8-47:3;47:17-48:9.

3. ___Defendant proceeded to ask plaintiff a series of questions about his identity___.

      *Supporting evidence:*

       Plaintiff's deposition Exhibit "A", 47:17-48:9;51:19-25

4. ___Plaintiff refused to answer questions and attempted to explain to officer Wilkening that he was wrong about the law___.

      *Supporting evidence:*

      Plaintiff's deposition Exhibit "A", 47:17-48:9, 48:10-23, 50:20-23; 54:20-22; 55:12-15 ; 61:24-62:25; 64:1-12; 64:20-65:3; 70:3-4; 71:3-23; 101:14-25; Plaintiff's FAC Exhibit "D" – page 4, lines 1-4; Plaintiff's FAC – Exhibit "D" – page 4, lines 4-7.

5. ___Plaintiff had his hands in his pockets at times and at other times his hands were out of his pockets___.

      *Supporting evidence:*

       "When detaining plaintiff for the investigation of the violation of SMMC § 3.12.540 and to issue him a citation, …*plaintiff continued to put his hands in his pockets*.  Due to plaintiff's …refusal to take his hands out of his pockets … Officer Wilkening  considered

him a hazard to [Officer Wilkening's] safety, [Glair's] own safety and the safety of others.  At approximately 2:56:31, he contacted dispatch and requested backup. Just after the verbal time stamp of 2:56:31 on Exhibit "B" Officer Wilkening recognizes his voice stating "Can I get a backup?" He asked for backup in order to have someone standing by when he conducted the pat-down search in the event plaintiff decided to fight or worse, was concealing a weapon".  Dec. Wilkening ¶ ¶ 2 (in part, as set forth above) and ¶ 6, Exhibit "B" Recording of Radio Broadcast of Incident No. 10-34485, January 10, 2010;  Exhibit "C" Notice to Appear.

See also, the following which was not attached to Defendant's Declarations and Exhibits in Support of his Motion for Summary Judgment, but filed in Defendant's Objection/Response to Plaintiff's Statement of Controverted Facts and Matters of Law, (Document 129) which cited to Declaration of Richard J. Glair, Exhibit "A" to Plaintiff's List of Exhibits in Opposition to Defendant's Motion Summary Judgment Motion. (Document 126)

Defendant's Objection/Response re: Fact No. 3: page 6, lines 3-17:

 Plaintiff's Declaration 3:5 - Plaintiff states "I had my hands at my side, I never put them in *my* pocket." (upon Wilkening's arrival); and,

Plaintiff's Declaration 4: 3 – Plaintiff states "my hands

UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW AND ORDER THEREON

were not in my pockets (sic)". [2]

Defendant's Objection/Response re: Fact No. 4: page 7, line 19 – page 8, line 5:

Plaintiff's Declaration 3:18- he never told me to "take my hands out of my pocket".

Plaintiff never states that he had neither hand in a pocket at any time, just that he didn't have "both hands in his pocket".

Exhibit "C", to Plaintiff's List of Exhibits in Opposition to Defendant's Summary Judgment Motion, Plaintiff's Deposition, pages 52, lines 21 through 25, wherein he denies he had his hands in his pockets with the argument "Who has both their hands in their pockets?" And, Exhibit "C", page 53, lines 2-4, wherein plaintiff states: "No. Who puts both hands in their pockets, Ms. Rohr.  He specifically says 'hands in his pocket.'"  Plaintiff mischaracterizes the Officer's declaration, which states "and continued to put his hands in his pockets". (Dec. Wilkening, page 1, lines 18-22)  The Officer does not state that the plaintiff "kept" his hands in his pockets, but that he continued to "put" his hands in his pockets. Plaintiff has not denied having either of his hands in either of his pockets at any time, just having both hands in his pockets, or his pocket, at the same time.

---

[2] In his Declaration, page 4, line 3, Plaintiff stated "my hands were not in my pocket". The "s" at the end of the word pocket in Defendant's Objection/Response re:Fact No. 3 regarding Plaintiff's Declaration at page 4, line 3, was a typographical error.

1

2   **6.**   ***Defendant performed a pat-down search on plaintiff and removed items from***

3   ***plaintiff's pocket.***

4   ***Supporting evidence:***

5   Plaintiff's deposition Exhibit "A", 61:24-62:25; 63: 5-

6   18; 64:1-12.

7   "Due to these exigent circumstances, Officer

8   Wilkening told plaintiff he was going to search him

9   for weapons.  In his attempt to conduct a pat-down

10   Officer Wilkening ordered him to turn around and

11   place his hands behind his back". Dec. Wilkening ¶ 2

12   (in part, as set forth under No. 5 above) and ¶ 3;

13   Exhibit "B" Recording of Radio Broadcast of Incident

14   No. 10-34485.

15   "Immediately upon Officer Boyd's arrival he was told

16   by Officer Wilkening to "stand by" as he was going to

17   pat down the subject". Dec. Boyd ¶ 4 ,in part.

18   "In Officer Wilkening's attempt to conduct a pat-down

19   Officer Boyd heard Officer Wilkening order Mr. Glair

20   to turn around and place his hands behind his back".

21   Dec. Boyd ¶ 5, in part.

22

23   **7.**   ***Plaintiff was sent on his way after the brief stop.***

24   ***Supporting evidence:***

25   Plaintiff's deposition Exhibit "A", 64:1-12; 70:3-4;

26   71:3-23.

27

28

UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW AND ORDER THEREON

8. ***Plaintiff and defendant had a heated conversation.***

                  ***Supporting evidence:***

                  Plaintiff's Deposition, Exhibit "A" 33:23-34:21; 39:24-40:15; 41:7-10; 24-42:14; 45:3-24; 46:8-47:3; 47:17-48:9; 48:10-23, 50:20-23; 51:19-25; 54:20-22; 55:12-15; 61:24-62:25; 63:5-18; 64:1-12; 64:20-65:3; 70:3-4; 71:3-23; 101:14-25; Plaintiff's FAC Exhibit "D" – page 4, lines 1-7.

9. ***Plaintiff became very agitated.***

                  ***Supporting evidence:***

                  Plaintiff does not dispute that he became agitated. "When detaining plaintiff for the investigation of the violation of SMMC § 3.12.540 and to issue him a citation,…plaintiff *continued to put his hands in his pockets*. Due to plaintiff's refusal to take his hands out of his pockets … Officer Wilkening considered him a hazard to [Officer Wilkening's] safety, [Glair's] own safety and the safety of others. Additionally, Plaintiff also *became very agitated*, a fact he does not dispute. At approximately 2:56:31, he contacted dispatch and requested backup. Just after the verbal time stamp of 2:56:31 on Exhibit "B" Officer Wilkening recognizes his voice stating "Can I get a backup?" He asked for backup in order to have someone standing by when he conducted the pat-down search in the event plaintiff decided to fight or worse, was concealing a weapon". Dec. Wilkening ¶

7

¶ 2 (in part, as set forth above) and 6, Exhibit "B" Recording of Radio Broadcast of Incident No. 10-34485, January 10, 2010, and Exhibit "C" Notice to Appear.

See also, the following which was not attached to Defendant's Declarations and Exhibits in Support of his Motion for Summary Judgment, but filed in Defendant's Objection/Response to Plaintiff's Statement of Controverted Facts and Matters of Law, (Document 129) which cited to Declaration of Richard J. Glair, Exhibit "A" to Plaintiff's List of Exhibits in Opposition to Defendant's Motion Summary Judgment Motion. (Document 126)

<u>Defendant's Objection/Response re: Fact No. 3</u>: page 5, lines 25-26.

<u>Plaintiff's Declaration 3:7</u> –plaintiff states "no sudden movements" but does not deny that he was "agitated".

**10.** ___*Plaintiff wouldn't stand still.*___

> *Supporting evidence:*
>
> Plaintiff does not dispute that he wouldn't stand still. "When detaining plaintiff for the investigation of the violation of SMMC § 3.12.540  and to issue him a citation, …plaintiff *continued to put his hands in his pockets.* Due to plaintiff's refusal to take his hands out of his pockets, Officer Wilkening  considered him a hazard to [Officer Wilkening's] safety, [Glair's] own safety and the safety of others.  Additionally, plaintiff

UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW AND ORDER THEREON

*wouldn't stand still,* a fact he does not dispute. At approximately 2:56:31, he contacted dispatch and requested backup.  Just after the verbal time stamp of 2:56:31 on Exhibit "B" Officer Wilkening recognizes his voice stating "Can I get a backup?" He asked for backup in order to have someone standing by when he conducted the pat-down search in the event plaintiff decided to fight or worse, was concealing a weapon". Dec. Wilkening ¶ ¶ 2 (in part, as set forth above) and 6, Exhibit "B" Recording of Radio Broadcast of Incident No. 10-34485, January 10, 2010, and Exhibit "C" Notice to Appear.

See also, the following which was not attached to Defendant's Declarations and Exhibits in Support of his Motion for Summary Judgment, but filed in Defendant's Objection/Response to Plaintiff's Statement of Controverted Facts and Matters of Law, (Document 129) which cited to Declaration of Richard J. Glair, Exhibit "A" to Plaintiff's List of Exhibits in Opposition to Defendant's Motion Summary Judgment Motion. (Document 126)

Defendant's Objection/Response re: Fact No. 3: page 5, lines 27-28.

Plaintiff's Declaration 3:8 –plaintiff states he did "not attempt to run" but does not deny that he "wouldn't stand still". (Also, see No. 9 above regarding Plaintiff's Declaration 3:7 –plaintiff states "no sudden movements" but does not deny that he "wouldn't stand

UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW AND ORDER THEREON

still".)

**11.    _Plaintiff was making  exaggerated hand gestures._**

*Supporting evidence:*

Plaintiff does not dispute that he made exaggerated hand gestures. "When detaining plaintiff for the investigation of the violation of SMMC § 3.12.540 and to issue him a citation, …plaintiff *continued to put his hands in his pockets.* Due to plaintiff's refusal to take his hands out of his pockets … Officer Wilkening  considered him a hazard to [Officer Wilkening's] safety, [Glair's] own safety and the safety of others.  Additionally, plaintiff *was making exaggerated hand gestures,* a fact he does not dispute. At approximately 2:56:31, he contacted dispatch and requested backup.  Just after the verbal time stamp of 2:56:31 on Exhibit "B" Officer Wilkening recognizes his voice stating "Can I get a backup?" He asked for backup in order to have someone standing by when he conducted the pat-down search in the event plaintiff decided to fight or worse, was concealing a weapon". Dec. Wilkening ¶ ¶ 2 (in part, as set forth above) and 6, Exhibit "B" Recording of Radio Broadcast of Incident No. 10-34485, January 10, 2010, and Exhibit "C" Notice to Appear.

See also, the following which was not attached to Defendant's Declarations and Exhibits in Support of his Motion for Summary Judgment, but filed in Defendant's Objection/Response to Plaintiff's

Statement of Controverted Facts and Matters of Law,
(Document 129) which cited to Declaration of
Richard J. Glair, Exhibit "A" to Plaintiff's List of
Exhibits in Opposition to Defendant's Motion
Summary Judgment Motion. (Document 126)
<u>Defendant's Objection/Response re: Fact No. 3</u>: page
6, lines 1-2.
<u>Plaintiff's Declaration 3:8</u> –plaintiff states "not
waiving his hands" but does not deny he was "making
exaggerated hand gestures".

## **CONCLUSIONS OF LAW**

1.     Summary judgment is proper if the pleadings, depositions, answers to interrogatories and affidavits show there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. (Fed. Rules Civil Proc., Rule 56(c).)  Defendant, Officer Wilkening, has established that the record does not disclose a genuine dispute on a material fact as to the claims against him. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once this is done, the burden shifts to the non-moving party to set forth affirmative evidence, or specific facts which show that a genuine dispute on the issues exists.  See *Anderson v. Liberty Lobby, Ind.*, 477 U.S. 242, (1986).

2.     The Court need not accept as true unreasonable inferences or legal conclusions cast in the form of factual allegations.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009).  Nor is the Court required to accept plaintiff's *unreasonable* inferences or unwarranted deductions of fact.  *In re Delorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993); *Taylor v. F.D.I.C.* 132 F.3d 753, 762 (D.C. Cir. 1997); *Transphase Systems, Inc. v. Southern Calif. Edison Co.* 839 F.Supp. 711 , 718 (CD CA 1993);

1
2
3
4
5

*Beliveau v. Caras,* 873 F.Supp. 1393, 1395-1396 (C.D. Cal. 1995).  *Ashcroft v. Iqbal,* 129 S. Ct.1937,1949 ["A pleading that offers 'labels and conclusions' or 'a formulaic recitation of elements of a cause of action will not do.'(citations omitted)  Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'"]

6
7
8
9
10
11
12

      3.    A police officer may conduct a brief stop for investigatory purposes when the officer has only "reasonable suspicion" to believe the stopped individual is engaged in criminal activity.  *Terry v. Ohio*, 392 U.S. 1, 23-27 (1968) Reasonable suspicion is formed by 'specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity.'" *United States v. Dorais*, 241, F.3d 1124, 1130 (9th Cir. 2001)

13
14
15
16
17
18
19
20

      4.    Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.  *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865. (1989)  Restraint, and not more, does not rise to the level of a Fourth Amendment violation. *Graham,* 490 U.S. at 395, 396. Summary judgment should be granted as to Plaintiff's First Claim for illegal seizure under the Fourth Amendment as based upon the undisputed material facts the seizure of plaintiff was constitutionally permissible. *Terry,* 392 U.S. at 23-27.

21
22
23
24
25
26
27

      5.    Exceptions to the warrant requirement include limited searches for weapons based on reasonable suspicion, *Terry,* 392 U.S. at 23 - 27, and exigent circumstances, *see United States v. Place*, 462 U.S. 696, 701, 103 S.Ct. 2637 (1983) "The sole justification for the search in the present situation is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer". *Terry,* 392 U.S. at 29.

28

      6.    It is a well-settled exception to the warrant requirement that "exigent

circumstances" can justify a warrantless search consistent with the Fourth Amendment. *See Warden v. Hayden*, 387 U.S. 294, 298 (1987) upholding a warrantless search where "the exigencies of the situation made the course imperative." The Ninth Circuit has defined exigent circumstances to include those circumstances that would cause a reasonable person to believe that the search was necessary to prevent physical harm to the officers or other persons. *Menotti v. City of Seattle*, 409 F.3d 1113, 1152 (9th Cir 1952).

7.     In this case there are two critical facts that are relevant to determining whether defendant's frisk and search and the seizure of the items from plaintiff was constitutionally permissible –*Plaintiff and Defendant had a heated discussion;* and, *Plaintiff had his hands in his pockets at times and at other times his hands were out of his pocket.* Viewed objectively under the totality of the circumstances of this case, the facts articulate reasonable grounds for suspecting the Plaintiff [Glair] was armed and dangerous. *Terry v. Ohio,* 392 U.S. 1 (1986).  Summary judgment should be granted as to Plaintiff's Second Claim for illegal search under the Fourth Amendment as based upon the undisputed material facts the search of plaintiff was constitutionally permissible. *Terry,* 392 U.S. at 23-27.

8.     Under Section 1983, qualified immunity must be recognized as long as "officers of reasonable competence could disagree" on the propriety of the officer's conduct. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  The qualified immunity inquiry is objective, and immunity may not be denied merely because, in the end, the officer's conduct was unlawful.

9.     Officers can have reasonable, but mistaken, beliefs as to the facts and in those situations, courts will not hold that they have violated the Constitution.  *Id.; Saucier v. Katz,* 531 U.S. 991 (2001).

10.     Qualified immunity thus serves to ensure that officials do not "exercise their discretion with undue timidity."  *Wood v. Strickland*, 420 U.S. 308, 321 (1975) Consistent with that goal, it provides "ample room for mistaken judgments' by

protecting 'all but the plainly incompetent or those who knowingly violate the law. '" *Hunter v. Bryant,* 502 U.S. 224, 229 (1991) *(*quoting *Malley,* 475 U.S. at 343, 341).

11.    In the Fourth Amendment context, the "reasonableness" inquiry is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Graham v. Connor*, 490 U.S. at 397.

12.    As restraint, and not more, does not rise to the level of a Fourth Amendment violation, Officer Wilkening is entitled to qualified immunity on Plaintiff's Second Claim because under the totality of the circumstances a reasonable officer could have concluded that his seizure of Plaintiff was objectively reasonable. *See Graham v. Connor*, 490 U.S. at 395, 396.

13.    Further, even if the pat down were not justified, Defendant Officer Wilkening is entitled to qualified immunity on Plaintiff's First Claim because under the circumstances a reasonable officer could have concluded that plaintiff's conduct presented a danger to the officer or the public. *Pearson v. Callahan,* 555 U.S. 223, (2009)  *Harlow v. Fitzgerald* 457 U.S. 800.(1982)

14.    Defendant Officer Wilkening has articulated undisputed facts demonstrating his reasonable suspicion, which are wholly apart from the content of plaintiff's speech, that plaintiff posed a danger to the officer or the public.  Therefore, Officer Wilkening would have conducted the frisk and subsequent search and seizure whether or not plaintiff disagreed with his issuance of a bicycle citation.  *Mendocino Environmental Center v. Mendocino County,* 192 F.3d 1283 (9th Cir. 1999).  The proper inquiry is whether an "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Mendocino Env'l Ctr*., 192 F.3d at 1300.

15.    To demonstrate retaliation in violation of the First Amendment, [plaintiff] must ultimately prove first the [defendant] took action that would chill or silence a person of ordinary firmness from future First Amendment activities… The

second requirement is [that] [plaintiff] must ultimately prove that [defendant's] desire to cause the chilling effect was a but-for cause of [defendant's] action." *Dietrich v. John Ascuaga's Nugget,* 548 F.3d 892, 900-01(9th Cir. 2008), quoting *Skoog v. County of Clackamas*, 469 F.3d 1221, 1231-32 (9th Cir. 2006)  To rise to the level of a constitutional violation, plaintiff must prove that the challenged conduct would chill or silence a person or ordinary firmness from future First Amendment activities and also that the defendant's desire to cause the chilling effect was a but-for cause of the action. *Dietrich,* 548 F.3d at 900-01; *Skoog*, 469 F. 3d at 1231-32. The relevant causation is understood to be but-for causation, without which the adverse action would not have been taken. *Hartman v. Moore*, 547 U.S. 250, 260, 126 S. Ct 1695, 164 L. Ed. 2d 441 (2006).

16.     Further, based on the conclusions of law articulated above, and on the undisputed facts presented in this case, defendant Officer Wilkening is entitled to qualified immunity on Plaintiff's Third Claim for First Amendment Retaliation. *See, Holland v. City of San Francisco,* 2013 WL 968295 (N.D.Cal. 2013).

17.     Although plaintiff and defendant disagree on who escalated the tone and volume of the conversation during the stop in which defendant cited plaintiff for riding his bicycle on the sidewalk, that dispute is not material.  Plaintiff has failed to established any material facts to defeat summary judgment on behalf of Officer Wilkening, because for purposes of summary judgment, a dispute is material only if it would affect the outcome of the action.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

///

///

///

///

///

///

1    18.    Therefore, there are no genuine disputes of material fact and the

2    defendant, Officer Wilkening, is entitled to summary judgment as a matter of law

3    under Rule 56 on all of plaintiff's remaining claims (First, Second and Third Claims)

4

5    **IT IS HEREBY SO ORDERED, ADJUDGED AND DECREED:**

6
     Dated this 21st day of August, 2013
7

8

9    _____

10    HONORABLE MANUEL L. REAL
      United States District Judge
11

12

13

14

15

16

17   Presented By:

18
     MARSHA JONES MOUTRIE
19   City Attorney

20       /s/*Carol Ann Rohr*
     By_____
21       CAROL ANN ROHR
         Deputy City Attorney
22
         Attorney for Defendant
23        Officer Wilkening

24

25

26

27

28

_____
                         16
UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW AND ORDER THEREON

1

**PROOF OF SERVICE**

Richard J. Glair v. City of Santa Monica, et al

2

CV 11 0093 R (RNB)

3

4

5

6

   I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 1685 Main Street, Third Floor, Santa Monica, California 90401-3295. On August 6, 2013, I served the document(s) described as **UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW AND ORDER THEREON** on the interested parties in this action as follows:

7

   ☒   by placing  ☐  the original   ☒ a true copy thereof enclosed in sealed envelopes addressed as follows:

8

9

Richard J. Glair                              Plaintiff – in pro per
1183 Queen Anne Place                 Telephone No.: (323) 860-8719
Los Angeles, CA 90019

10

11

12

13

☒   **BY MAIL**:  I am readily familiar with the firm's practice of collection and processing correspondence, pleadings, and other matters for mailing with the United States Postal Service.  In the ordinary course of business, the correspondence would be deposited with the United States Postal Service on that same day with postage thereon fully prepaid at Santa Monica, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

14

15

16

17

☐   BY FEDERAL EXPRESS   ☐ UPS NEXT DAY AIR   ☐ OVERNIGHT DELIVERY:  I deposited such envelope in a facility regularly maintained by ☐ FEDERAL EXPRESS  ☐ UPS  ☐ Overnight Delivery [specify name of service: ] with delivery fees fully provided for or delivered the envelope to a courier or driver of  ☐ FEDERAL EXPRESS   ☐ UPS   ☐ OVERNIGHT DELIVERY [specify name of service:] authorized to receive documents at 1685 Main Street, Santa Monica, California 90401, with delivery fees fully provided for.

18

☐   **BY FAX**:  I telecopied a copy of said document(s) to the following addressee(s) at the following number(s) in accordance with the written confirmation of counsel in this action.

19

20

☒   **BY PERSONAL SERVICE:  Santa Monica Express, Inc.,** personally delivered such envelope by hand to the addressee(s).

21

☐   [State]      I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

22

23

☒   [Federal]      I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

24

   Executed on August 6, 2013, at Santa Monica, California.

25

                                                            /s/ Maria Comer

26

                                                            MARIA COMER

27

28